

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00300-CR

DAVID OYEWOLE FALADE                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant David Oyewole Falade appeals his convictions for aggravated robbery with a deadly weapon while engaging in organized criminal activity and for burglary of a habitation while engaged in organized criminal activity. In three issues, Falade contends that the trial court erred by allowing the State to

---

[1]*See* Tex. R. App. P. 47.4.

introduce certain photographs, by excluding a self-serving hearsay statement, and by denying his challenge to a veniremember for cause. We will affirm.

## II. BACKGROUND

Terrance Nielsen came home in the early morning, Monday, February 2, 2009, and went to bed while the rest of the family left for work and school. Although he initially heard a banging noise at the back of the house, he thought nothing of it, believing the neighbor was doing yard work. He then heard the stairs creak and opened his eyes to see Falade coming into his bedroom holding a pistol. Falade raised the pistol, pointed it at Nielsen, and fired a shot to Nielsen's right. Falade then pointed the pistol toward Nielsen's head, demanding Nielsen's money. Nielsen said he did not have his wallet.

Falade then forced Nielsen through the house, eventually forcing Nielsen into a closet while Falade continued to pilfer. At one point, Nielsen freed himself, called 9-1-1, and returned to the closet without Falade knowing he had done so. Falade then again forced Nielsen through the house in an attempt to find valuable possessions, eventually forcing him to get under a bed in another bedroom. Shortly after, Nielsen heard Falade yell. He then heard other voices yell "freeze" and "drop the gun."

Officer Bryant Parks and Officer Don Allred arrived shortly after the 9-1-1 call. Parks took position in the front of the house. Allred went to cover the back of the house. As Allred approached the back door, Falade opened the door and stepped out, pointing his pistol at Allred. Allred yelled for Falade to drop his gun.

2

After a short standoff, Falade threw his pistol down. Allred ordered Falade to lie on the patio. After hearing Allred issue commands to Falade to get down, Parks went to the backyard, where Allred had already apprehended Falade. Falade was in the prone position at Allred's gunpoint.

At trial, defense counsel, after the State's hearsay objection and outside the presence of the jury, questioned Parks about whether Falade had said anything to Allred. Parks said that Falade had said, "They made me do it." The trial court sustained the State's objection. Also at trial, the State introduced a number of photographs, some of which included Falade and other alleged gang members flashing gang signs. Other photographs contained only Falade holding a gun, wearing brass knuckles, and wearing a bandana as a mask. Defense counsel objected to the photographs of Falade holding a gun, wearing brass knuckles, and wearing the bandana. The trial court overruled Falade's objection and allowed the State to introduce the photographs. A jury returned a verdict of guilty and assessed punishment at thirty-two years' confinement on each case, to run concurrently. This appeal followed.

## III. DISCUSSION

### A. Photographs

In his first issue, Falade argues that the trial court erred by allowing the State to introduce photographs that display him holding a gun, wearing brass knuckles, and wearing a bandana as a mask. Specifically, Falade argues that these photographs "impermissibly alluded to the commission of extraneous

3

offenses and impermissibly introduced character evidence against" him.  *See* Tex. R. Evid. 404(b).  The State argues that Falade failed to object at trial under rule 404(b) of the Texas Rules of Evidence and has waived this issue for our review.  The State also argues that the photographs were relevant to establish its case-in-chief.  Although Falade's objection at trial was largely based on rule 403 of the Texas Rules of Evidence, he also objected to the introduction of these photographs because, according to Falade, the photographs "[went] to [Falade's] specific prior bad act[s]."  We conclude that Falade has preserved this alleged error for our review.

We review the trial court's determination to admit evidence under an abuse of discretion standard.  *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement.  *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

Evidence of extraneous offenses is not admissible as character evidence. *See* Tex. R. Evid. 404(b).  Such evidence may be admissible, however, if the evidence has relevance other than to show character conformity.  *Moses*, 105 S.W.3d at 626.  Examples within the rules of evidence include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  Tex. R. Evid. 404(b).  Even relevant evidence offered for a permissible purpose under rule 404(b) may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.  *See* Tex. R. Evid.

4

403; *Moses*, 105 S.W.3d at 626. In determining whether the danger of unfair prejudice outweighs the probative value of the evidence of an extraneous offense, we consider (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable; (2) the potential of the evidence to impress the jury in an irrational but indelible way; (3) the time needed to develop the evidence; and (4) the force of the proponent's need for the evidence. *See Mozon v. State*, 991 S.W.2d 841, 847 n.7 (Tex. Crim. App. 1999) (discussing factors trial court is to consider when determining whether the probative value of extraneous offense evidence outweighs a claim of prejudice). *Cf. Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004) (discussing factors to determine whether photographs are more prejudicial than probative).

Falade argues that the State introduced the objected-to photographs solely to show his propensity to commit crimes or bad acts. Thus, Falade contends, the probative value of the evidence was substantially outweighed by its prejudicial and inflammatory nature. *See* Tex. R. Evid. 403. But to carry its burden of proving Falade's participation in a criminal street gang, the State was required to show that Falade and his companions "continuously or regularly associate in the commission of criminal activities." Tex. Penal Code Ann. § 71.01(d). Thus, some evidence of extraneous offenses would be relevant and, indeed, essential to meet the State's burden of proof. *See Hernandez v. State*, 52 S.W.3d 268, 278 (Tex. App.—Corpus Christi 2001, no pet.) (reasoning that the admissibility of extraneous activity is necessary to prove that defendant was a member of a

5

criminal street gang); *see also Roy v. State*, 997 S.W.2d 863, 867 (Tex. App.—Fort Worth 1999, pet. ref'd) (stating that when a defendant is charged with engaging in organized criminal activity under section 71.02 of the penal code, the State is entitled to introduce evidence that the defendant was a gang member and regularly engaged in criminal activities such as the illegal sale and distribution of drugs).

The photographs in question, along with other photographs displaying Falade with other alleged gang members flashing gang signs, were both relevant and highly probative that Falade and his companions engaged in violent crimes as members of a gang.[2] This series of photographs allowed the State to provide compelling evidence that made Falade's alleged involvement as a member of a criminal street gang more probable than if the photographs had not been introduced. The photographs are not of a nature that they have the potential to impress the jury in an irrational but indelible way. And given that the State bore the burden to prove Falade's involvement in a street gang, the force of the photographs was necessary to establish this requirement. *See Chaddock v. State*, 203 S.W.3d 916, 923 (Tex. App.—Dallas 2006, no pet.) (holding that evidence of a prior assault committed by defendant was relevant to show he

---

[2]Falade testified in his own defense. During questioning, Falade admitted that he was a gang member and also testified to the contents of many of the pictures that the State admitted into evidence. Falade's testimony regarding a number of these pictures was that he was in a gang at the time the photos were taken and that the photos depicted his membership in that gang.

engaged in criminal activity and was not offered solely to prove character conformity). We conclude and hold that the trial court's determination to admit into evidence the objected-to photographs does not lie outside the zone of reasonable disagreement. *See Montgomery*, 810 S.W.2d at 391. Thus, we overrule Falade's first issue.

### B. Self-serving Statement

In his second issue, Falade contends that the trial court erred by not allowing him to elicit testimony from Parks that as he was being handcuffed, Falade said to Allred, "They made me do it." Falade's contention is that his statement was a res gestae statement which should have been admitted as evidence that he committed the robbery under duress. The State argues that the statement is a classic self-serving hearsay statement and that the trial court correctly excluded its admission.

The determination of admissibility of evidence is within the trial court's sound discretion and will not be reversed on appeal absent a clear abuse of discretion. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994); *Gaitan v. State*, 905 S.W.2d 703, 708 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd).

Hearsay is defined by the rules of evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). "Matter asserted" includes "any matter explicitly asserted, and any matter implied by a

7

statement, if the probative value of the statement as offered flows from declarant's belief as to the matter." Tex. R. Evid. 801(c).

It is the rule in Texas that self-serving declarations are not admissible in evidence as proof of the facts asserted. *See Hafdahl v. State*, 805 S.W.2d 396, 402 (Tex. Crim. App. 1990), *cert. denied*, 500 U.S. 948 (1991); *Crane v. State*, 786 S.W.2d 338, 353–54 (Tex. Crim. App. 1990); *Allridge v. State*, 762 S.W.2d 146, 152 (Tex. Crim. App. 1988), *cert. denied*, 489 U.S. 1040 (1989); *Chambers v. State*, 905 S.W.2d 328, 330 (Tex. App.—Fort Worth 1995, no pet.); *State v. Morales*, 844 S.W.2d 885, 891–92 (Tex. App.—Austin 1992, no pet.). There are, however, limited exceptions to this general rule that permit introduction of such proof. The exception at issue in this case is whether Falade's self-serving declaration was part of the res gestae of the offense or arrest. *See Allridge*, 762 S.W.2d at 152; *Singletary v. State*, 509 S.W.2d 572, 576–77 (Tex. Crim. App. 1974).

One of the factors for determining a res gestae statement in Texas is "spontaneity." *See Allridge*, 762 S.W.2d at 152; *Rubenstein v. State*, 407 S.W.2d 793, 795 (Tex. Crim. App. 1966). This principle was explained long ago as follows:

> For a statement to be a part of the res gestae, the declaration must deal substantially with, and must grow out of, the main fact so as to be spontaneous and not, in any event, a narration of a past event or occurrence. Above everything else, there must exist that spontaneity which takes the statement out of the realm of narration or premeditation.

8

*See Allridge*, 762 S.W.2d at 152 (quoting *Trammell v. State*, 145 Tex. Crim. 224, 167 S.W.2d 171, 174 (Tex. Crim. App. 1942)). In *Singletary*, the Texas Court of Criminal Appeals elaborated on this standard, noting: "These principles embrace such factors as time elapsed, and, more importantly, spontaneity, or whether the statement was instinctive." 509 S.W.2d at 577; *see also Fisk v. State*, 432 S.W.2d 912, 914–15 (Tex. Crim. App. 1968). And it is well established that the statements must be generated by an excited feeling that extended without break or let-down from the moment of the event they illustrate. *Hamilton v. State*, 138 Tex. Crim. 205, 209, 135 S.W.2d 476, 478 (1940).

After carefully examining the record before us, we hold that there is nothing in this record to establish that the trial court abused its discretion by excluding the complained-of statement. During Falade's bill of exception, Parks testified that it was during "handcuffing procedures" that Falade made the alleged statement. Parks said that while he was unsure of the exact timing of Falade's statement, he "assumed" it was made more than two minutes after Falade had been apprehended. Parks also stated that the statement was made at a time when the tension of the arrest had "cease[d]." Under this record, we cannot say whether the "spontaneity" of Falade's statements existed to take such statements "out of the realm of narration or premeditation." *See Allridge*, 762 S.W.2d at 152. Therefore, we hold that the trial court did not abuse its discretion by excluding Falade's self-serving statements. We overrule Falade's second issue.

9

## C.    Vacillating Veniremember

In his third issue, Falade contends that the trial court erred by denying his challenge for cause to veniremember 37.  Pointing out that veniremember 37 at one time said that she could not consider the full statutory range of punishment but later stated that she could consider the evidence before determining what punishment within the statutory range was appropriate, Falade asks this court to hold that veniremember 37 "gave the answers that she thought the person questioning her wanted to hear, and that she did so with an incomplete appreciation for the issue she was being questioned about."  The State retorts that veniremember 37 was a classic vacillating veniremember and that the trial court did not abuse its discretion by denying Falade's challenge for cause.

In the case of a vacillating veniremember, we defer to the decision of the trial court, which was in a position to actually see and hear the veniremember in the context of the voir dire.  *Granados v. State*, 85 S.W.3d 217, 232–33 (Tex. Crim. App. 2002), *cert. denied*, 538 U.S. 927 (2003).  Such a ruling will not be disturbed unless there is no adequate basis in the record to support the ruling. *Vuong v. State*, 830 S.W.2d 929, 944 (Tex. Crim. App.), *cert. denied*, 506 U.S. 997 (1992).  Elements such as demeanor and tone of voice, among other things, are important factors in conveying the precise message intended by the veniremember.  *Mooney v. State*, 817 S.W.2d 693, 701 (Tex. Crim. App. 1991).

Here, veniremember 37 initially indicated that she could not consider the low range of punishment, but she later stated that she was going to wait and hear

10

the evidence before deciding what punishment would be appropriate within the statutory range. In light of veniremember 37's apparently contradictory statements, we defer to the trial judge, who was best positioned to evaluate her demeanor and voir dire as a whole. *See Threadgill v. State*, 146 S.W.3d 654, 669 (Tex. Crim. App. 2004). Therefore, we overrule Falade's third issue.

## IV. CONCLUSION

Having overruled all three of Falade's issues, we affirm the trial court's judgments.


BILL MEIER
JUSTICE

PANEL: GARDNER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 1, 2011